Aaron C. Gundzik (State Bar No. 132137)
Rebecca G. Gundzik (State Bar No. 138446)
**GARTENBERG GELFAND HAYTON LLP**
15260 Ventura Blvd., Suite 1920
Sherman Oaks, CA  91403
Telephone: (213) 542-2100
Facsimile:  (213) 542-2101

Marshall A. Caskey (State Bar No. 65410)
Daniel M. Holzman (State Bar No. 176663)
**CASKEY & HOLZMAN**
24025 Park Sorrento, Ste. 400
Calabasas, CA  91302
Telephone: (818) 657-1070
Facsimile: (818) 297-1775

Attorneys for Plaintiffs Jonathan Bromberg and Alexis Maitchoukow,
Individually and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BROMBERG, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>     vs.<br><br>FIDELITY NATIONAL INFORMATION SERVICES, INC., a Georgia corporation, and FIS MANAGEMENT SERVICES, LLC, a Delaware limited liability company,<br><br>         Defendants. | **Case No.: 2:15-CV-7930**<br><br>**Case No.: 2:16-CV-7632**<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: July 7, 2017<br>Time: 10:00 a.m.<br>Courtroom: 8C<br><br>[Declarations of Aaron C. Gundzik, Jonathan Bromberg, Alexis Maitchoukow and Cassandra Cita concurrently-filed] |

1

ALEXIS MAITCHOUKOW, individually and on behalf of all others similarly situated,

     Plaintiff,

       vs.

FIDELITY NATIONAL INFORMATION SERVICES, INC., a Georgia corporation, and FIS MANAGEMENT SERVICES, LLC, a Delaware limited liability company, DOES 1 through 25,

     Defendants.

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on July 7, 2017, at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 8C of the above-entitled Court, located at 350 W. 1st Street, 8th Floor, Los Angeles, CA 90012, Plaintiffs Jonathan Bromberg and Alexis Maitchoukow ("Named Plaintiffs" or "Representative Plaintiffs") will, and hereby do, move for an Order, as follows:

    1.    Granting final approval of the parties' Settlement Agreement, as it appears to be proper, to fall within the range of reasonableness, to be the product of arms'-length and informed negotiations, and to treat all Class Members fairly and adequately;

    2.    Granting final approval of the California Class, defined in the Settlement Agreement as "all current or former employees of Defendants who were employed by Defendants in California and held the job titles of Systems Administrator I, Systems Administrator II, Systems Administrator Senior, Hardware Planner, Email Messaging Analyst II, Email Messaging Analyst Senior, Operations Software Analyst I, Operations Software Analyst II, or Operations Software Analyst Senior at any time between October 8, 2011 and the date of Preliminary Approval" (the "California Class");

    3.    Granting final approval of the Collective Class, defined in the Settlement Agreement as "all current or former employees of Defendants in

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

the United States who held the job titles of Systems Administrator I, Systems Administrator II, Systems Administrator Senior, Hardware Planner, Email Messaging Analyst II, Email Messaging Analyst Senior, Operations Software Analyst I, Operations Software Analyst II, or Operations Software Analyst Senior at any time between October 8, 2012 and the date of Preliminary Approval and who submitted a timely and valid Consent to Join form that was filed with the Court" (the "Collective Class");

4.     Ordering that the Notice of Settlement in the form and manner ordered by the Court was accomplished as directed, and meets the requirements of due process in that it provided the best practicable notice of the Settlement to the California Class and the Collective Class;

5.     Granting final approval of the appointment of Plaintiffs Jonathan Bromberg and Alexis Maitchoukow as Class Representatives;

6.     Granting final approval of the appointment of Aaron Gundzik of Gartenberg Gelfand Hayton LLP and Daniel M. Holzman as Class Counsel;

7.     Granting final approval of the payment of a service and release payment in the amount of $15,000 to Plaintiff Jonathan Bromberg and in the amount of $10,000 to Plaintiff Alexis Maitchoukow and finding the amount reasonable considering the time, effort, and risk undertaken by each of the Class Representatives;

8.     Granting final approval of the payment of $7,200 to the Settlement Administrator, Simpluris;

9.     Granting final approval of Class Counsels' attorneys' fees in the amount of $750,000 and Class Counsels' litigation costs in the amount of $10,789.25, as requested in the Motion for Approval of Class Counsels' Attorneys' Fees and Costs filed April 21, 2017 [Doc # 56];

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

10.   Directing the Settlement Administrator to proceed with the distribution of the funds from the Settlement in accordance with the terms contained therein;

11.   Entering the concurrently-filed Proposed Order Granting Final Approval of the Settlement.

Plaintiffs' motion is based on this Notice of Motion and Motion, the concurrently-filed Memorandum of Points and Authorities, the [Proposed] Preliminary Approval Order, the Declarations of the proposed Class Counsel, Aaron C. Gundzik and Daniel M. Holzman, the Declarations of Plaintiffs Jonathan Bromberg and Alexis Maitchoukow, the Declaration of Cassandra Cita of Simpluris, the pleadings and other papers filed in this action, and such further argument or evidence as may be considered at the hearing on the motion.

This motion is unopposed by Defendants Fidelity National Information Services, Inc. and FIS Management Services, LLC.

Dated: June 8, 2017            GARTENBERG GELFAND HAYTON LLP

                      By:    */s/ Aaron C. Gundzik*

                              Aaron C. Gundzik
Attorneys for Plaintiffs Jonathan Bromberg and Alexis Maitchoukow, individually and on behalf of all others similarly situated

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................1

II.   FACTUAL BACKGROUND ..............................................................2

  A.   The Underlying Facts.....................................................................2

  B.   Procedural History and Investigation and Discovery Prior to
      Settlement......................................................................................4

  C.   Plaintiffs' Counsel's Estimate of Potential Recovery ...................6

  D.   The Mediation and Settlement Negotiations ................................9

  E.   The Representative Plaintiffs' Involvement and Release...............10

  F.   The Preliminarily-Approved Settlement.......................................12

  G.   Notice of Preliminary Settlement Provided to the Settlement Class  and
      the Claims Process.......................................................................13

  H.   Proposed Distributions from Gross Settlement Amount ...............14

  I.   Proposed Release of Defendants by Class Members............................15

III.  THE SETTLEMENT MEETS THE STANDARDS FOR FINAL
     APPROVAL BECAUSE IT IS FAIR, REASONABLE AND
     ADEQUATE. ....................................................................................16

  A.   The Strength of Plaintiffs' Case...................................................17

  B.   The Risk, Expense, Complexity and Likely Duration of Further
      Litigation......................................................................................19

  C.   The Risk of Maintaining Class Action Status Through Trial.............19

  D.   The Benefits Offered in Settlement. ...........................................19

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

E.    The Extent of Investigation and Discovery Completed and the Stage of the Proceedings. ....................................................................20

F.    The Experience and Views of Counsel. ...............................................20

G.    The Settlement has no Obvious Deficiencies, was Reached Through Arm's-Length Bargaining, and is not a Product of Collusion..............21

H.    The Reaction of the Class Members. ....................................................22

IV.   THE PROPOSED SERVICE AND RELEASE PAYMENTS TO THE REPRESENTATIVE PLAINTIFFS ARE FAIR AND ............................. REASONABLE. ...................................................................................22

V.    THE PROPOSED PAYMENT TO THE SETTLEMENT ADMINISTRATOR IS FAIR AND REASONABLE.................................24

VI.   CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Barcia* v. *Contain-A-Way, Inc.,*
    2009 U.S. Dist. LEXIS 17118 (S. D. Cal. 2009) .......................................... 18

*Boyd v. Betchel Corp.,*
    485 F. Supp. 610 (D.C. Cal 1976) ................................................................ 22

*Browning* v. *Yahoo!, Inc.,*
    2007 US. Dist. LEXIS 86266 (N.D. Cal. 2007*)* ........................................... 18

*Cellphone Termination Fee Cases,*
    186 Cal.App. 4th 1380 (2010) ...................................................................... 23

*Churchill Village, L.L.C. v. GE.,*
    361 F.3d 566 (9th Cir. 2004) ........................................................................ 17

*Clark v. American Residential Services LLC,*
    175 Cal.App.4th 785 (2009) ......................................................................... 23

*Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir.1992).................................................................. 17, 18

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ...................................................................... 17

*In Re Janney Montgomery Scott LLC Financial Consultant Litig.,*
    2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009)............................... 23

*Joel A. v. Giuliani,*
    218 F.3d 132 (2d Cir. 2000).......................................................................... 17

*Matter of Continental Illinois Securities Litigation,*
    962 F.2d 566 (7th Cir. 1992) ........................................................................ 23

*Navarro v. Servisair,*
    2010 WL 1729538 (N.D. Cal. 2010) ............................................................ 23

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Officers for Justice v. Civil Service Com'n, etc.*,
   688 F.2d 615 (9th Cir. 1981) ........................................................17

*Reed v. General Motors*,
   703 F.2d 170 (5th Cir. 1983) ........................................................22

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................23

*Sav-On Drug Stores, Inc. v. Super.Ct.*,
   34 Cal.4th 319 (2004) ..................................................................24

*Staton* v. Boeing Co.,
   327 F.3d 938 (9th Cir. 2003) ........................................................24

*Stevens v. Safeway, Inc.*,
   2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) .............23

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ..............................................23

**Statutes**
Business & Professions Code section 17200 ............................................8, 16
Cal. Labor Code § 201 .....................................................................5, 16, 21
Cal. Labor Code § 202 .....................................................................5, 16, 21
Cal. Labor Code § 203 ................................................................................16
Cal. Labor Code § 203(a) .............................................................................8
Cal. Labor Code § 226 ...........................................................................8, 16
Cal. Labor Code § 226(a) .............................................................................5
Cal. Labor Code § 226(e)(1) ....................................................................7, 8
Cal. Labor Code § 226.7(b) ...................................................................5, 16
Cal. Labor Code § 501 ................................................................................15
Cal. Labor Code § 510 .................................................................................5
Cal. Labor Code § 512(a) .......................................................................5, 16
Cal. Labor Code §1194 ...........................................................................5, 15
#

**Other Authorities**
29 C.F.R. §541.200 ......................................................................................6
29 C.F.R. §541.400 ......................................................................................6
Eisenberg & Miller ....................................................................................23

Fair Labor Standards Act, 29 U.S.C. § 201 ....................................................5, 15

Incentive Awards to Class Action Plaintiff: An Empirical Study
  (2006) 53 UCLA L.Rev. 1303 ......................................................................23

Newberg on Class Actions (4th ed. 2002) § 11:38, p. 81 ..........................18, 23


**<u>Rules</u>**

California Civil Code Section 1542 ................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This unopposed motion seeks final approval of the proposed class action settlement of alleged violations of the Federal Labor Standards Act ("FLSA") and California labor law asserted in the Master Complaint which consolidates the Class and Collective Action Complaints filed by Plaintiffs Jonathan Bromberg and Alexis Maitchoukow (the "Actions") against Defendants Fidelity National Information Services, Inc. and FIS Management Services, LLC ("Defendants" or "FIS"). The Actions allege, in essence, that Defendants misclassified Plaintiffs and other systems administrators and other non-management information technology personnel and thereby deprived the members of the opt-in collective FLSA class (the "Collective Class") of overtime payments, and denied the members of the Rule 23 class (the "California Class") overtime payments as well as compliant meal and rest breaks.

On March 10, 2017, this Court granted preliminary approval of the parties' settlement as set forth in the Stipulation of Class Action Settlement (the "Stipulation" or "Settlement Agreement"),[1] approved the Notice of Settlement, and set a hearing date for final approval on July 7, 2017. Following entry of the Preliminary Approval Order, the parties ensured that each step necessary to effectuate the terms of the Settlement Agreement occurred as ordered by the Court. Specifically, on March 25, 2017, the settlement

---

[1] Capitalized terms have the meanings ascribed to them in the parties' Stipulation of Settlement, a copy of which is attached as Exhibit 1 to the Declaration of Aaron C. Gundzik in Support of Motion for Preliminary Approval of Class Action Settlement ("Gundzik Decl. re Preliminary Approval"), ¶ 29 [Doc. #51-2]

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

administrator mailed the Notice of Settlement to the 245 Settlement Class Members ("Class Members"), who could choose whether to opt-out of the Settlement or object to it by May 9, 2017. Any Class Member who did not opt-out would automatically receive approximately the amount set forth in the Notice. Class Members stand to receive, on average, roughly $8,512.13. Supplemental Declaration of Cassandra Cita ("Cita Decl."), ¶ 6.

As of the close of the notice period, Class Members' responses have been overwhelmingly positive. To date, only two Class Members have opted-out, and not a single Class Member has objected to the Settlement. These results represent a resounding approval of the Settlement by the Class Members.

## II.    FACTUAL BACKGROUND

### A.    The Underlying Facts

As discussed in Plaintiffs' Motion for Preliminary Approval, based upon their investigation, which included extensive interviews of Plaintiffs and numerous class members, and the review of voluminous records, Plaintiffs' counsel has adduced the following facts: Defendants employ systems administrators and similar personnel both internally and to Defendants' customers. Plaintiff Jonathan Bromberg is a current employee of FIS and has been employed since 2009. Mr. Bromberg works as a systems administrator, with an official job title of Systems Administrator II. He is employed by FIS, but works at a Sedgwick Claims Management Services, Inc. ("Sedgwick") office in Los Angeles County. Gundzik Decl. re Preliminary Approval, ¶ 15; Declaration of Jonathan Bromberg ("Bromberg Decl."), ¶ 2.

Plaintiff Alexis Maitchoukow is a former employee of FIS who was employed in positions with official job titles of Systems Administrator Senior and Hardware Planner. Gundzik Decl. re Preliminary Approval, ¶ 16 [Doc. #51-2]; Declaration of Alexis Maitchoukow ("Maitchoukow Decl."), ¶ 2. Mr.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Maitchoukow was employed by FIS at an FIS data Center in Los Angeles County, where he worked as a Hardware Planner between February 2011 and January 2013, and worked as a Systems Administrator Senior between January 2011 and February 2015. *Id.* Although his job title changed during the term of his employment for Defendants, he alleged that his job duties did not. *Id.*

Plaintiffs contend that Plaintiffs' jobs, like that of the Settlement Class Members, are basically help-desk overflow positions, and that they are the second level of support who speak with the user after the help desk creates the ticket for the computer issue involved. Gundzik Decl. re Preliminary Approval, ¶ 17 [Doc. #51-2]. Plaintiffs further contend that they did not manage any other personnel, and their primary duties do not require them to exercise discretion and independent judgment with respect to matters of significance as to Defendants' business. *Id.* As such, Plaintiffs allege that they do not qualify for the administrative exemption. Plaintiffs further allege that they are also not covered by the computer employee exemption, as their primary duties do not consist of the analysis of software or hardware specifications or software or hardware design or development. *Id.* Defendants dispute the forgoing contentions and contend that Plaintiffs and all Settlement Class Members were paid in accord with California and Federal law.

Plaintiff Bromberg contends that his supervisors instructed him to be available at all hours and that he must check his telephone regularly when not in the office and on weekends. Bromberg Decl., ¶ 3. Plaintiff Maitchoukow makes similar contentions. Maitchoukow Decl., ¶ 3. Defendants deny that such instructions were given to Plaintiffs.

Prior to the mediation, Defendants produced some self-recorded time records for Plaintiff Maitchoukow and a sample group of employees. Declaration of Aaron C. Gundzik ("Gundzik Decl."), ¶ 23. Based upon these

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

records, Plaintiffs' counsel formulated an estimate of the amount of overtime worked by the Settlement Class Members. *Id.*

Plaintiffs contend that the Settlement Class Members who were employed in California missed lunch regularly, and often did not get rest breaks. Gundzik Decl. re Preliminary Approval, ¶ 24 [Doc. #51-2]. Defendants contend that Plaintiffs and Settlement Class Members were exempt and therefore under California law, Defendants were not required to provide them with meal or rest breaks.

Plaintiffs further contend that the wage statements for Settlement Class Members who were employed in California are inaccurate because they did not include payment for overtime and/or missed meal and rest period premiums. Gundzik Decl. re Preliminary Approval, ¶ 25 [Doc. #51-2]. Defendants dispute this contention and contend that all wage statements issued to California Settlement Class Members were accurate and complied with California law.

Finally, Plaintiffs contend that those Settlement Class Members who were discharged or resigned during the class period were not paid all amounts due to them at separation, because their final paychecks did not include the amounts due to them for their unpaid overtime or meal and rest period premiums. *Id.* Defendants dispute this contention and contend that Settlement Class Members received all wages owed to them within the time period required by California law.

### B.   Procedural History and Investigation and Discovery Prior to Settlement

As explained in greater detail in Plaintiffs' motion for preliminary approval, Plaintiff Jonathan Bromberg filed his initial complaint in Case No. CV-15-7930 (the "Bromberg Action") against Defendants Fidelity National Information Services, Inc. and FIS Management Services, LLC (collectively "FIS" or "Defendants") on October 8, 2015. On October 13, 2016, Plaintiff

Alexis Maitchoukow filed a complaint against Defendants in Case No. 2:16-CV-7632 (the "Maitchoukow Action"). On January 4, 2017, pursuant to a stipulation between the parties and Order of the Court [Doc. #47], Plaintiffs filed a Master Class Action Complaint, which consolidated the Bromberg Action and the Maitchoukow Action and alleges causes of action against Defendants for (1) violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, (2) failure to pay overtime (Cal. Labor Code §§510 and 1194), (3) failure to authorize compliant meal and rest breaks (Cal. Labor Code §§ 226.7(b) and 512(a), (4) inaccurate wage statements (Cal. Labor Code § 226(a), (5) failure to pay unpaid wages at time of discharge (Cal. Labor Code §§201 and 202), (6) unfair business practices and conversion. In the Master Complaint, Plaintiffs are claiming the same injuries based upon the same alleged wage and hour policies as are the members of the Collective Class and California Class. Gundzik Decl. re Preliminary Approval, ¶ 7 [Doc. #51-2].

Pursuant to a Stipulation and Order of the Court dated April 25, 2016 [Doc. #28], the Court conditionally certified a collective class of "all persons employed by Defendants within the United States on or subsequent October 8, 2012 as systems administrators, including those with job titles 'Systems Administrator I' and 'Systems Administrator II'." Pursuant to a Stipulation and Order of the Court dated November 7, 2016 [Doc. #43], the Court conditionally certified the collective class to additionally include "current and former employees with the job titles of Systems Administrator Senior, Hardware Planner, Email Messaging Analyst II, Email Messaging Analyst Senior, Operations Software Analyst I, Operations Software Analyst II, and Operations Software Analyst Senior," for the same time period. In conjunction with and pursuant to those Orders [Docs. #28, 43], notices of the lawsuit were sent out to all of the current and former employees of Defendants who worked in one of the above-referenced job titles during the Collective Class Period.

Gundzik Decl. re Preliminary Approval, ¶¶ 8-9 [Doc. #51-2]. In response to those notices, 105 individuals signed valid Consent to Join forms that have been filed with the Court. Of those, fifteen were employed within the State of California. *Id.*

The parties mediated the dispute before a well-respected mediator, Mark Rudy, on October 19, 2016. Gundzik Decl., ¶ 27. In connection with their formal and informal discovery efforts, Defendants produced handbooks and policies, information regarding the number of employees in the Collective Class and the California Class and the number of workweeks worked by them, the average hourly rates for the job titles included within the mediation, and time records for Plaintiff Maitchoukow and 10 sample employees. Gundzik Decl., ¶¶ 12, 23. Plaintiffs used all of this information to estimate the potential damages recoverable on each of Plaintiffs' causes of action. Gundzik Decl., ¶¶ 23, 32-39.

**C.      Plaintiffs' Counsel's Estimate of Potential Recovery**

The First Claim for Relief is for violation of the FLSA.  It is based on the argument that Plaintiffs and the other Settlement Class Members were treated as exempt employees, but they were not subject to the administrative exemption in 29 C.F.R. §541.200 *et seq.*, the computer employee exemption in 29 C.F.R. §541.400 *et seq.*, or any other exemption. Gundzik Decl., ¶ 32. As a result of this alleged misclassification, Plaintiffs allege that they and the Settlement Class Members were not paid for their overtime work, as required under the FLSA. It is difficult to assess the exact value of this claim because Defendants did not keep records of all of the time the Settlement Class Members worked and Plaintiffs therefore had limited records from which they could estimate the number of hours worked each week. *Id.*

Plaintiffs' counsel considered these factors and the Plan View information, and assumed that Plaintiffs could prove that the Settlement Class

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Members worked one to four unpaid overtime hours per week. Gundzik Decl., ¶ 33. Based on those factors and assumptions, as well as the fact that little documentary evidence existed to support the alleged amount of unpaid overtime owed to the Class, Plaintiffs' counsel determined that this claim had a maximum value of $2.32 million. *Id*.

The Second Claim for Relief is for failure to pay overtime to those Settlement Class Members who were employed by Defendants in California. Gundzik Decl., ¶ 34. The assessment of damages due on this claim is based upon the same information Plaintiffs' counsel considered with respect to the First Claim for Relief for violation of the FLSA. *Id*. Plaintiffs' counsel determined that this claim had a maximum value of $2,808,000 million. *Id*.

The Third Claim for Relief is for failure to authorize compliant meal and rest breaks. This claim was based not on time-keeping records, but on Plaintiffs' efforts to obtain anecdotal evidence supporting the contention that employees who worked for Defendants in California allegedly skipped meal and rest breaks or were not given compliant rest breaks, as Defendants did not require these employees to clock in and out for meal periods. Gundzik Decl., ¶ 35. Consequently, this claim would be very difficult to sustain on a class-wide basis. As a result, Plaintiffs' counsel determined that this claim had a relatively low settlement value. *Id*. Plaintiffs' counsel opines that this claim has an estimated maximum settlement value of about $1,872,000. *Id*.

The Fourth Claim for Relief is for alleged failure to provide legally compliant wage statements, and is derivative of Plaintiffs' other claims for unpaid wages. Its success would therefore be dependent upon the success of those other claims. Moreover, under Labor Code section 226(e)(1), to prevail on this claim, Plaintiffs would have to establish that the violation was "knowing and intentional." Gundzik Decl., ¶ 36. The statute of limitations on such a claim is one year. The penalty for providing an inaccurate wage

statement is $50 for the first violation and $100 for each successive violation, to a maximum of $4,000 per employee. Because of the short statute of limitations, only a portion of the California-based employees would be eligible to recover anything under section 226. Current employees could potentially recover the maximum, while former employees could recover much lesser amounts. Plaintiffs' counsel determined that the maximum amount recoverable on this claim is estimated to be $144,000. *Id.* However, the Court could determine that the violations were not "knowing and intentional" under section 226(e) and decide to not award any penalties. *Id.*

The Fifth Claim for Relief is for alleged failure to pay separated employees all wages due at the time of separation, which is based on Defendants' failure to include overtime payments in the final wages paid to the California-based employees. The statute of limitations on this claim is three years. Only former employees could potentially recover under section 203(a). Plaintiffs' counsel determined that these employees might recover a maximum of about $525,000. Gundzik Decl., ¶ 37. This cause of action is also derivative of Plaintiffs' other claims for unpaid wages and its success would be dependent upon the success of those other claims. *Id.* Moreover, liability under section 203(a) requires a finding of willfulness, and willfulness could be difficult to establish. *Id.*

The Sixth and Seventh Causes of Action are for violations of Business & Professions Code section 17200, *et seq.*, and conversion. The forgoing analysis assumes the longer four-year statute of limitations that is available under the UCL for certain violations. Gundzik Decl., ¶ 38. Accordingly, the damages available under this cause of action have already been analyzed or are duplicative of damages discussed above. Similarly, the claim for conversion of wages is duplicative of Plaintiffs' other causes of action for the recovery of unpaid wages. *Id.*

8

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Based upon the forgoing, in advance of the mediation, and based on a class size of 180, Plaintiffs' counsel determined that this case had a maximum estimated value of approximately $5,994,000, if Plaintiffs prevailed on all claims on behalf of both classes.[2] Gundzik Decl., ¶ 39. Based on a class size of 243 (the actual class size based on Defendants' data, less the 2 opt-outs), Plaintiffs' counsel determined that this case had a maximum estimated value of approximately $7,669,000, if Plaintiffs prevailed on all claims on behalf of both classes. *Id.* As the Court knows, the maximum amount is almost never recovered at trial and never in a settlement. Settlements, by their nature, must account for the weaknesses in a plaintiff's case. Here, these weaknesses include, among other things, the difficulty of certifying the proposed classes, especially given that the class members worked for different FIS customers in different positions and in different environments. Proving that the Settlement Class Members were misclassified, and proving that the California-based employees were not given compliant meal and rest breaks would also be difficult. *Id.* In fact, Defendants raised a colorable legal or factual defense to each claim Plaintiffs alleged and strenuously argued that individual differences would prevent the Court from granting certification. *Id.* Indeed, it is possible that, had Plaintiffs not accepted the proposed settlement, the Settlement Class Members would not recover anything. *Id.*

**D.    The Mediation and Settlement Negotiations**

On October 19, 2016, Plaintiff Jonathan Bromberg, Plaintiffs' counsel, Defendants and Defendants' Counsel attended a mediation session before well-respected mediator, Mark Rudy. Gundzik Decl., ¶ 27. At the end of the day, the

---

[2] This valuation was based on an anticipated class size of 180 and was based on information provided by Defendants in advance of the mediation. As set forth in the Declaration of Aaron C. Gundzik, after Defendants' delivery of class data to the Settlement Administrator, Plaintiffs' learned that the class size was 245, of whom 2 have opted out. Gundzik Decl., ¶ 10.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

mediation resulted in an agreement to settle memorialized in a Memorandum of Agreement that set forth the material terms of the settlement. *Id.* Those terms were subsequently memorialized in the Stipulation of Settlement. Among other things, the settlement requires Defendants to pay $3,000,000, inclusive of the employer's share of payroll taxes, in full settlement of the action. Gundzik Decl. re Preliminary Approval, ¶¶ 29-30, and Ex. 1 thereto [Doc. #51-2]. The settlement was negotiated at arm's length and was in no sense collusive. *Id.*

Plaintiffs and Plaintiffs' counsel have concluded, after taking into account the sharply disputed factual and legal issues involved in the lawsuit, the risks attending further prosecution, and the substantial benefits to be received pursuant to the compromise and settlement of the action, that the settlement is in the best interests of the Representative Plaintiffs and the Collective Class and California Class, and is fair and reasonable. Gundzik Decl., ¶ 28; Gundzik Decl. re Preliminary Approval, ¶ 29, and Ex. 1 thereto, at ¶ I [Doc. # 51-2]. Plaintiffs and Plaintiffs' counsel also considered the possibility that the Court would not certify the classes and the additional delay in recovery for Settlement Class Members if the settlement were rejected and the case went to trial. *Id.*

### E.      The Representative Plaintiffs' Involvement and Release

Both before and after filing the lawsuit, Plaintiffs engaged in lengthy conversations with Class Counsel about all aspects of the case, their employment, and their jobs while working for Defendant. Bromberg Decl., ¶ 14; Maitchoukow Decl., ¶ 13. They were prompt and responsive, and traveled to Class Counsel's offices in Calabasas and Sherman Oaks. Bromberg Decl., ¶ 14; Maitchoukow Decl., ¶ 13. Mr. Bromberg also missed a full day of work and traveled to San Francisco to attend the full-day mediation. Bromberg Decl., ¶ 15. They identified relevant witnesses to Class Counsel and provided them with relevant documents. Bromberg Decl., ¶ 14; Maitchoukow Decl., ¶ 13.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

They were proactive and requested regular updates from Class Counsel and inquired as to how class actions worked so they could understand the process. Bromberg Decl., ¶ 14; Maitchoukow Decl., ¶ 13.

To assist Class Counsel, the named Plaintiffs reviewed and collected all of their documents in connection with their employment for Defendants. Bromberg Decl., ¶ 15; Maitchoukow Decl., ¶ 14. They assisted Class Counsel in preparing for the mediation, and they discussed the proposed settlement with Class Counsel. Bromberg Decl., ¶ 15; Maitchoukow Decl., ¶ 14. They also reviewed and discussed the Settlement Agreement and related motions. *Id*. In all, Mr. Bromberg spent in excess of 150 hours on the case, Mr. Maitchoukow spent in excess of 100 hours on the case. Bromberg Decl., ¶ 15; Maitchoukow Decl., ¶ 14.

Filing the lawsuits posed risks for Messrs. Bromberg and Maitchoukow. Bromberg Decl., ¶ 11; Maitchoukow Decl., ¶ 10. They understood that if the class action was unsuccessful, they could be responsible for Defendants' litigation costs, which could have been substantial. *Id*. They were concerned by the attention a publicly-filed lawsuit, and especially a class action, would attract, as their names would be associated with a lawsuit that they had filed against an employer. *Id*. They were aware that it is possible and relatively easy to perform background checks of publicly filed documents on the internet, and were concerned that prospective employers might find out that they sued Defendants, which could hurt their job prospects in the future. *Id*.

In addition, the settlement agreement requires that Mr. Bromberg and Mr. Maitchoukow sign a broad general release which is broader than the release that will bind other Class Members and requires them to waive Section 1542 of the California Civil Code. Gundzik Decl. re Preliminary Approval, ¶ 29, Ex. 1, ¶ VII. Nevertheless, they agreed to accept these risks because

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

important rights were at stake that affected all of Defendants' current and former employees. Bromberg Decl., ¶ 11; Maitchoukow Decl., ¶ 10.

### F.    The Preliminarily-Approved Settlement

On March 10, 2017, the Court granted preliminary approval to the settlement of this matter. There are two preliminary-approved settlement classes: (1) a "Collective Class"  which includes all current or former employees of Defendants in the United States who held the job titles of Systems Administrator I, Systems Administrator II, Systems Administrator Senior, Hardware Planner, Email Messaging Analyst II, Email Messaging Analyst Senior, Operations Software Analyst I, Operations Software Analyst II, or Operations Software Analyst Senior at any time between October 8, 2012 and March 10, 2017 and who submitted a timely and valid Consent to Join form in the Bromberg Action that was filed with the Court"; and (2) a "California Class" which includes all current or former employees of Defendants who were employed by Defendants in California and held the job titles of Systems Administrator I, Systems Administrator II, Systems Administrator Senior, Hardware Planner, Email Messaging Analyst II, Email Messaging Analyst Senior, Operations Software Analyst I, Operations Software Analyst II, or Operations Software Analyst Senior at any time between October 8, 2011 and March 10, 2017. [Doc. #54]; Gundzik Decl., ¶ 29 re Preliminary Approval, Ex. 1, ¶ I, II.G, II.E [Doc. #51-2]. In all, there are 245 class members—147 of whom are members of the California Class, 87 of whom are members of the Collective Class, and 11 of whom are members of both classes. Cita Decl., ¶ 8.

Defendants will pay a gross settlement amount of $3,000,000.00 ("Gross Settlement Amount"). Gundzik Decl. re Preliminary Approval, ¶ 29, Ex. 1, ¶¶ I, II.T [Doc. #51-2]. Defendants are required to deliver the Gross Settlement Amount to the Settlement Administrator within ten (10) calendar days of the

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Court's Order or Final Approval. Gundzik Decl. re Preliminary Approval, ¶ 29, Ex. 1, ¶ IV.M. Until distribution, the gross settlement amount will be held in an escrow account established by the Settlement Administrator. *Id.*; Declaration of Jarrod Salinas in Support of Motion for Preliminary Approval, ¶ 5 [Doc. #51-1].

**G.     Notice of Preliminary Settlement Provided to the Settlement Class and the Claims Process**

Pursuant to the time table established in the Settlement Agreement and previously approved by this Court, the Settlement Administrator mailed the Notice of Proposed Class Action Settlement ("Notice of Settlement") on March 25, 2017 to all of the members of the classes. Cita Decl., ¶ 8. As a result of this mailing, the Settlement Administrator has provided all of the Class Members with a notice of the settlement which calculates the approximate value of their settlement payment, and information on how to opt out of and object to the proposed settlement. Cita Decl., ¶ 8.

> ➤ On March 20, 2017, the Settlement Administrator received from Defendants complete information including the names, addresses and workweeks for all 245 Class members.

Cita Decl., ¶ 4.

> ➤ The Settlement Administrator confirmed all of the addresses through the National Change of Address (NCOA) database and corrected the class member mailing addresses as necessary.

Cita Decl., ¶ 7.

> ➤ On March 25, 2017, the Notices of Settlement were mailed to all 245 of the Class Members at the most recent addresses available to the Settlement Administrator. The notices provided information about the action, the proposed settlement and instructions on how to opt out, object, or obtain further information. The notices

13

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

advised Class Members that any objections or opt outs had to be postmarked within 45 days of the notice date.

Cita Decl., ¶ 8; Gundzik Decl. re Preliminary Approval, ¶ 29, Ex. A. to Ex. 1 [Doc. #51-2].

> ➢ Subsequent to these mailings, 7 Notices of Settlement were returned to the Settlement Administrator, 4 were re-mailed, and 3 were determined to be undeliverable.

Cita Decl., ¶ 9.

> ➢ The Settlement Administrator has received 2 opt-out requests and no objections. Class Counsel has not received any opt-out requests or objections to the proposed settlement.

Cita Decl., ¶ 10; Gundzik Decl., ¶ 47.

> ➢ There are no outstanding disputes regarding any settlement claim.

Cita Decl., ¶ 10.

**H.      Proposed Distributions from Gross Settlement Amount**

The Settlement Agreement provides that, if the Court grants final approval, as of the Effective Date the Gross Settlement Amount will be disbursed as follows:

- Settlement administration costs, in an estimated amount of $7,200 (Salinas Decl., ¶ 4) [Doc. #51-1];

- Class counsel's attorneys' fees, to be approved by the Court, in the approximate amount of $750,000.00, which is twenty-five percent of the Gross Settlement Amount (Gundzik Decl. re Preliminary Approval, ¶ 29, Ex. 1, ¶ I) [Doc. #51-2];

- Class counsel's actual costs, as approved by the Court, as requested in Plaintiffs' motion for attorneys' fees in the amount of $10,789.25 (Declaration of Aaron C. Gundzik in Support of Motion for Attorneys' Fees and Costs, ¶ 26, Ex. 1) [Doc. #56];

14

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

- Service and release payments to the Representative Plaintiffs in an amount totaling $25,000 ($15,000 to Plaintiff Bromberg and $10,000 to Plaintiff Maitchoukow) for their time and efforts in pursuing this action and as additional compensation for the expanded releases they are providing (Gundzik Decl. re Preliminary Approval, ¶ 29, Ex. 1, ¶ I) [Doc. #51-2];

- The remainder of the Gross Settlement Amount (the "Net Settlement Amount"), in the amount of approximately $2,207,000, will be distributed to Settlement Class members based on the number of Qualifying Workweeks each Settlement Class Member was employed by Defendants.  Gundzik Decl. re Preliminary Approval, ¶ 29, Ex. 1, ¶¶ I, II.CC, IV.J.1 [Doc. #51-2].

**I.     Proposed Release of Defendants by Class Members**

If the Court gives final approval to the proposed settlement, the Settlement Agreement provides that the Court shall enter a final approval Order ("Final Approval Order") and a judgment implementing the release of the released claims as described in the Settlement Agreement.  Gundzik Decl. re Preliminary Approval, ¶ 29, Ex. 1 at ¶ IV.I. [Doc. #51-2]. As part of the Final Approval Order and judgment, Class Members who do not opt out will be deemed to have released the following Released Claims:

> all causes of action and factual or legal theories that were alleged in the Actions, including all of the following claims for relief: (1) violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., (2) failure to pay overtime wages or accurate overtime wages and alleged failure to accurately calculate the regular rate of pay in violation of California Labor Code §§ 501 and 1194, (3) failure to provide meal or rest breaks or compensation in lieu thereof in violation of California Labor Code §§ 226.7(b) and 512(a), (4) failure to provide accurate and/or complete wage statements or paychecks and alleged failure to maintain accurate records in violation of California Labor Code §226, (5) failure to pay unpaid wages at time of discharge in violation of California Labor Code §§ 201, 202 and 203, (6) violation of Cal. Bus. & Prof. Code section

15

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

17200 et seq., (7) conversion, (8) any other claims or penalties under the wage and hour laws pleaded in the Actions, and (9) all damages, penalties, interest and other amounts recoverable under said causes of action under California and federal law, to the extent permissible, including but not limited to the California Labor Code as alleged in the Actions, the applicable Wage Orders as to the facts alleged in the Actions, and the California Unfair Competition Law. Settlement Class Members.  The definition of Released Claims is intentionally broad in scope and includes all claims that were alleged based on the facts and legal theories described above irrespective of the factual or legal basis for such claims, whether currently known or unknown by the Representative Plaintiffs or any members of any of the California Class or Collective Class.

Gundzik Decl. re Preliminary Approval, ¶ 29, Ex. 1 at ¶ II.DD [Doc. # 51-2].

The release shall be effective as to "Defendants Fidelity National Information Services, Inc., FIS Management Services, LLC, as well as each of their respective parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, joint venturers, as well as each of their respective past, present and/or future, direct or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, and administrators." Gundzik Decl. re Preliminary Approval, ¶ 29, Ex. 1 at ¶ II.EE [Doc. #52-1].

## III. THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL BECAUSE IT IS FAIR, REASONABLE AND ADEQUATE.

A district court has broad discretion to grant approval of class action settlements where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has expressed a "strong judicial policy that favors settlement,

particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir.1992).

Courts strongly favor settlements of complex class actions, and there is a "strong initial presumption that the compromise is fair and reasonable." *Hanlon*, *supra*, 150 F. 3d at 1019; *see also* (*e.g.*) *Class Plaintiffs*, 955 F.2d at 1276. Thus, the Court's inquiry is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Com'n, etc.*, 688 F.2d 615, 625 (9th Cir. 1981).

The Ninth Circuit has identified a series of factors to consider in making this determination: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the benefits offered in the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the reaction of the class members to the proposed settlement; and (8) whether the settlement was a product of collusion. *Churchill Village, L.L.C. v. GE.,* 361 F.3d 566, 575-576 (9th Cir. 2004); *Hanlon v. Chrysler Corp*., 150 F.3d at 1026. Applying these factors, the Settlement is fundamentally fair, reasonable and adequate, and should be finally approved.

### A. The Strength of Plaintiffs' Case.

Assessing the strength of a plaintiff's case and the likelihood of recovery involves weighing the merits against the settlement amount and the potential recovery. *See* Newberg and Conte, NEWBERG ON CLASS ACTIONS (4th Ed. 2002), §11:44 at 121-22. However, the Court need not "reach any ultimate

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in the litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs,* 955 F.2d at 1291 *(citing Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d at 625).

As part of the preliminary approval process, this Court reviewed the claims, the facts, and the potential recovery. That analysis, and the valuation of each of the claims, as well as the possibility that certification would not be granted, are set forth in detail in the Declaration of Aaron Gundzik. Gundzik Decl., ¶¶ 12-13, 18, 20-26, 32-39. In short, Plaintiffs believe that although there was evidence that Plaintiffs and other computer support personnel employed by Defendants were misclassified, Plaintiffs had real concerns that their claims would not be certified. Gundzik Decl., ¶¶ 39-40.

As set forth in the factual background detailed above, the parties have vigorously litigated this matter, and Defendants have consistently contested that they misclassified the Collective Class or California Class or that they violated California's wage and hour laws. In fact, Defendants raised a colorable legal or factual defense to each claim Plaintiffs alleged. Gundzik Decl., ¶ 39. Given the anticipated value of the claims and the uncertainty of class certification and trial, Plaintiffs believe the settlement is fair and constitutes a reasonable compromise which considers the both the value of their claims and the strengths of Plaintiffs' case. *See Browning* v. *Yahoo!, Inc.*, 2007 US. Dist. LEXIS 86266, at *30 (N.D. Cal. 2007*) ("In considering the strength of Plaintiffs' case, legal uncertainties at the time of settlement - particularly those which go to fundamental legal issues – favor approval."); *Barcia* v. *Contain-A-Way, Inc.,* 2009 U.S. Dist. LEXIS 17118, *9 (S. D. Cal. 2009) ("Plaintiffs believe the benefits of a guaranteed recovery today outweigh an uncertain future result. Accordingly, plaintiffs argue, and the Court agrees,

18

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

the actual recovery confers substantial benefits on the class that outweigh the potential recovery through full adjudication.").

**B.      The Risk, Expense, Complexity and Likely Duration of Further Litigation.**

If the settlement is not approved, the Representative Plaintiffs would need to move forward with discovery and then move for class certification. Defendants would oppose certification on the grounds that numerous individualized fact issues allegedly exist relating to such matters as the individual working conditions of each employee and the lack of documentary evidence of the alleged violations. They would argue and could succeed in claiming that these individualized issues overwhelm common issues, and would also argue that the action is not manageable on a classwide basis. The result could be that the case would not be certifiable as a class or collective action. Gundzik Decl., ¶¶ 39-40.

**C.      The Risk of Maintaining Class Action Status Through Trial.**

If the settlement is not approved, and the Representative Plaintiffs are successful on their motion for certification of the classes, they would still be faced with significant risks in continuing with the litigation. Defendants could interpose a successful defense which could either cause the jury to reject Plaintiffs' claims or award the Collective Class and the California Class only a small amount of the unpaid wages and reimbursement amounts due to them. Gundzik Decl., ¶¶ 39-40.

**D.      The Benefits Offered in Settlement.**

In the experience of Class counsel, a gross settlement of $3,000,000.00 in an FLSA and wage and hour class action with the claims described above for two classes totaling 243 current and former employees is within the "ballpark" of a fair, reasonable and adequate settlement. Gundzik Decl., ¶ 28. Taking into account the serious risks associated with proceeding— that the case might not

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

be certified as a class action, that Plaintiffs might not succeed on the merits at trial or, if Plaintiffs succeed at trial, that the case is reversed on appeal – it becomes apparent that a settlement in this range—with an average recovery of $8,512.13—is fair to the classes.

### E.      The Extent of Investigation and Discovery Completed and the Stage of the Proceedings.

As set forth in the factual background detailed above, the parties have engaged in extensive factual investigation and informal discovery. Gundzik Decl., ¶¶ 11-26. As a result of formal and informal discovery, as well as the review of thousands of pages of documents and a sample of class members' time records, Plaintiffs were able to obtain the evidence necessary to fully evaluate the strengths and weaknesses of their case, as well as the approximate settlement value of each of their claims. Gundzik Decl., ¶¶ 13, 32-39.

### F.      The Experience and Views of Counsel.

As set forth in their declarations, Class Counsel have significant experience in wage and hour class actions. Gundzik Decl., ¶¶ 3-4; Declaration of Daniel M. Holzman ("Holzman Decl."), ¶¶ 2-3. Aaron Gundzik, Rebecca Gundzik and Daniel Holzman have each practiced law and been members of the California State Bar for over 20 years. *Id.* Based upon their vast experience in the area, when they arrived at a settlement with Defendants, Class Counsel had sufficient information to assess the strengths and weaknesses of the claims against Defendants, and the benefits of the settlement in light of the significant risks of continuing to certification and trial and the potential obstacles to be faced if the parties did not settle. Gundzik Decl., ¶¶ 3-4, 39-40; Holzman Decl., ¶¶ 6-7.

Class Counsel's experience in wage and hour class actions was integral in evaluating the strengths and weaknesses of the case and the reasonableness of the settlement. It is Class Counsel's opinion that this Settlement is fair,

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

adequate, and reasonable in protecting and vindicating the rights of Class Members. Gundzik Decl., ¶ 28; Holzman Decl., ¶ 7.

Defendants are represented by Ogletree, Deakins, Nash, Smoak & Stewart, P.C., a prominent national firm experienced in the defense of wage and hour class actions. From the onset, Defendants took the position that the causes of action were neither suitable for class certification nor had merit. Counsel for Defendants aggressively litigated the case and in consultation with Defendants, determined, after weighing the risks and benefits of proceeding, to enter into the Settlement.

**G. The Settlement has no Obvious Deficiencies, was Reached Through Arm's-Length Bargaining, and is not a Product of Collusion.**

In reviewing a proposed settlement to determine whether there are obvious deficiencies, the Court is required to engage in "an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, *supra*, 688 F.2d at 625. Under the terms of the Settlement Agreement, Defendants will make a single, non-reversionary payment of $3,000,000. The Settlement Agreement provides no preferential treatment for Plaintiffs or other Class Members. Because the California Class Members have alleged additional claims that are inapplicable to the Collective Class Members, they will be granted additional Qualifying Workweeks, and those California Class Members who are former employees will be granted additional Qualifying Workweeks in recognition of their claims under Labor Code sections 201 and 202. Gundzik Decl. re Preliminary Approval, ¶ 29, Ex. 1, ¶IV.J.1 [Doc. #51-2]. And, Plaintiffs will receive a distribution from the settlement proceeds that is calculated in the same manner as the distributions to other Settlement Class Members. *Id*.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Moreover, it is undisputed that the parties negotiated the settlement at arm's length during a lengthy mediation before a highly-regarded neutral third-party mediator, Mark Rudy, who has significant experience settling wage and hour class action lawsuits. Gundzik Decl., ¶ 27. In short, the settlement represents a significant recovery for the Settlement Class Members, and a well-crafted compromise of the divergent positions of the parties. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing Plaintiffs' claims and Defendants' defenses.

**H.    The Reaction of the Class Members.**

The reaction of the classes to the proposed settlement has been extremely positive. Not one of the 245 Class Members has objected to the proposed settlement, and only two have opted out. Cita Decl., ¶ 10.

Although a court may appropriately infer that a class action settlement is fair, adequate, and reasonable even when a significant percentage of class members object to it (*See Boyd v Betchel Corp.*, 485 F. Supp. 610, 624 (C. D. Cal 1976); *see also Reed v. General Motors*, 703 F.2d 170, 174 (5th Cir. 1983)), the fact that none have objected provides much stronger grounds for granting final approval. This indicates the Class Members' support for the settlement as being fair, adequate, and reasonable.

**IV.   THE PROPOSED SERVICE AND RELEASE PAYMENTS TO THE REPRESENTATIVE PLAINTIFFS ARE FAIR AND REASONABLE.**

The Settlement provides, and Plaintiffs are requesting, that the Court approve of service and release payments in an amount totaling $25,000 to the two Class Representatives ($15,000 to Plaintiff Bromberg and $10,000 to Plaintiff Maitchoukow) for their services as class representatives and for the expanded releases that they are being required to sign in conjunction with the

settlement. Gundzik Decl. re Preliminary Approval ¶ 29, Ex. 1, ¶¶ I, IV.I.[3]

"Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publication Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 Newberg on Class Actions (4th ed. 2002) § 11:38, p. 81); Eisenberg & Miller, Incentive Awards to Class Action Plaintiff: An Empirical Study (2006) 53 UCLA L.Rev. 1303. "Since without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' nonlegal but essential case-specific expenses, such as long-distance phone calls, which are reimbursable." *Clark v. American Residential Services LLC*,175 Cal.App.4th 785, 804 (2009) (fn. omitted), citing *Matter of Continental Illinois Securities Litigation*, 962 F.2d 566, 571 (7th Cir. 1992). In upholding an incentive award of $10,000 in a wage and hour class action settlement with a common fund of $900,000, Judge Patel of the Northern District stated:

> A $10,000.00 incentive award to plaintiff Navarro is reasonable.…An employee who lends his name to a lawsuit against a current or former employer is placed in a financially vulnerable position. Plaintiffs who take on this risk for the genuine enforcement of wage and hour provisions should be encouraged. Further, when individual plaintiffs faithfully execute their duties as a class representative, they should be rewarded.

*Navarro v. Servisair*, 2010 WL 1729538, *4 (N.D. Cal. 2010). Compared to the Net Settlement Amount of $2,207,000 (after deducting the proposed $25,000 service and release payments), the requested combined amount of

---

[3] See *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 300 (N.D. Cal. 1995); *Cellphone Termination Fee Cases*, 186 Cal.App. 4th 1380, 1393 (2010); *Stevens v. Safeway, Inc.*, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 to two class representatives with total recovery of $2,100,000); *In Re Janney Montgomery Scott LLC Financial Consultant Litig.*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) ($20,000 each to three class representatives with a gross settlement amount of $2,880,000).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

$25,000 will not appreciably diminish the amount available for distribution to the Settlement Class Members.

Plaintiffs consulted with Plaintiffs' counsel extensively in order to investigate the facts before filing the complaints, consulted with them extensively prior and subsequent to the mediation. Gundzik Decl., ¶ 26; Bromberg Decl., ¶ 15; Maitchoukow Decl., ¶ 14. Plaintiff Bromberg traveled to San Francisco to attend the mediation, and Plaintiffs consulted and met with Plaintiffs' counsel during post-mediation discussions and regarding the Settlement Agreement. *Id.* They both contributed a substantial amount of time to reviewing documents, producing documents, identifying witnesses, monitoring the progress of the litigation with counsel, and reviewing and signing the Settlement Agreement. *Id.* In fact, the award sought is a mere 0.8% of the overall recovery, which is well within the range of enhancement fees awarded by courts. *Staton v. Boeing Co.*, supra, 327 F.3d 938, 975-977 (9th Cir. 2003).

If Plaintiffs had not come forward, or had they not agreed to take on the risks of pursuing a class action, Plaintiffs may have recovered compensation for themselves, but no compensation would have been received by 243 current and former employees who will be receiving an average of $8,512.13 as a result of the settlement. Because Plaintiffs have advanced California's public policy goal of enforcing wage and hour laws (See *Sav-On Drug Stores, Inc. v. Super.Ct.*, 34 Cal.4th 319, 340 (2004)), the Court should approve of the proposed service and release payments to the Representative Plaintiffs.

## V. THE PROPOSED PAYMENT TO THE SETTLEMENT ADMINISTRATOR IS FAIR AND REASONABLE.

The Settlement provides that the chosen Settlement Administrator will be provided reasonable payment for its services to the classes. Here, Simpluris handled its duties in accordance with the Settlement terms and the Court's

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Preliminary Approval Order. In addition to distributing the Notice of Settlement, Simpluris handled and will continue to handle the following tasks: communicating with Class Members during the notice period, processing opt-out requests, calculating the settlement payments, preparing weekly reports on the opt-out and objection process, the mailing of settlement checks after final approval is granted, and remitting any uncashed funds to the *cy pres* recipient, as required pursuant to the terms of the Settlement Agreement. Gundzik Decl. re Preliminary Approval, ¶ 29, Ex. 1, ¶ IV.K. [Doc. #51-2]. Simpluris has performed all tasks required of it under the Settlement Agreement. Accordingly, the proposed payment of $7,200.00, is fair and reasonable. Thus, the proposed payment to CPT should be finally approved.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs, on behalf of themselves and the Collective Class and California Class, respectfully request that the Court grant preliminary approval of the settlement and set a final approval hearing as soon as practicable.


DATED:  June 8, 2017          GARTENBERG GELFAND HAYTON LLP


                              By:   */s/ Aaron C. Gundzik*
                                    Aaron C. Gundzik
                                    Attorneys for Plaintiffs Jonathan
                                    Bromberg and Alexis Maitchoukow,
                                    individually and on behalf of all others
                                    similarly situated

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 15260 Ventura Blvd., Suite 1920, Sherman Oaks, CA 91403.

On **June 8, 2017**, I served the following document described as **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** the interested parties in this action:

**(X)**      by serving ( ) the original **(X)** true copies thereof as follows:

### PLEASE SEE ATTACHED SERVICE LIST

| ( )      BY MAIL | ( )        BY FACSIMILE TRANSMISSION |
|---|---|
| I caused such envelope to be deposited in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit. | I caused said document(s) to be transmitted by facsimile transmission to the name(s) and facsimile telephone number(s) of the person(s) named on the attached service list. The facsimile machine telephone number of the sending facsimile machine was (213) 542-2101. A transmission report was issued by the sending facsimile machine confirming that the transmission was completed without error. A true and correct copy of said transmission report is attached hereto. |
| ( )      BY OVERNIGHT DELIVERY | **(X)**        BY ELECTRONIC TRANSMISSION |
| Said document was placed in an envelope designated by the express service center and placed for collection in a box regularly maintained by said carrier with whom we have a direct billing account, to be delivered to the office of the addressee listed above on the next business day. | I caused the above-referenced document(s) to be sent by electronic transmittal using the CM/ECF System for filing which generated a Notice of Electronic Filing to the CM/ECF registrants in this case. |

( )      STATE      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

(X)      FEDERAL      I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

(X)      EXECUTED      on **June 8, 2017**, at Sherman Oaks, California.

_/s/ Melissa L. Gonzalez_____
*Melissa L. Gonzalez*

**SERVICE LIST**

| | |
|---|---|
| Evan R Moses, Esq.<br>Ogletree Deakins Nash Smoak and Stewart PC<br>400 South Hope Street Suite 1200<br>Los Angeles, CA 90071<br>213-239-9800<br>Fax: 213-239-9045<br>Email: evan.moses@ogletreedeakins.com<br><br><br>Carmine J Pearl, II, Esq.<br>Ogletree Deakins Nash Smoak and Stewart PC<br>Park Tower<br>695 Town Center Drive Suite 1500<br>Costa Mesa, CA 92626<br>714-800-7900<br>Fax: 714-754-1298<br>Email: cj.pearl@ogletreedeakins.com | *Attorneys for Defendant Fidelity National Information Services, Inc. and FIS Management Services, LLC* |
| Aaron C. Gundzik (State Bar No. 132137)<br>Rebecca G. Gundzik (State Bar No. 138446)<br>GARTENBERG GELFAND HAYTON LLP<br>15260 Ventura Blvd., Suite 1920<br>Sherman Oaks, CA 91403<br>Telephone: (213) 542-2100<br>Facsimile:  (213) 542-2101<br>Email:  agundzik@gghslaw.com<br>           rgundzik@gghslaw.com<br><br>Marshall A. Caskey (State Bar No. 65410)<br>Daniel M. Holzman (State Bar No. 176663)<br>CASKEY & HOLZMAN<br>24025 Park Sorrento, Ste. 400<br>Calabasas, CA  91302<br>Telephone: (818) 657-1070<br>Facsimile:  (818) 297-1775<br>Email:  mcaskey@caskeyholzman.com<br>           dholzman@caskeyholzman.com | *Attorneys for Plaintiff Jonathan Bromberg, Individually and on behalf of all others similarly situated* |